**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DEJUAN MURRAY, No. 199134

       Petitioner,                      CASE NO. 2:08-CV-10781
                                         HONORABLE GEORGE CARAM STEEH
v.                                     UNITED STATES DISTRICT JUDGE

GREG MCQUIGGAN,

       Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND
DENYING CERTIFICATE OF APPEALABILITY**

**I. Introduction**

      This is a habeas case under 28 U.S.C. § 2254. Dejuan Murray, ("Petitioner"), is a

state inmate who is currently confined at the Chippewa Correctional Facility[1] where he is

serving two concurrent terms of 20-to-40 years imprisonment and a consecutive two year

term. The sentence results from his Wayne Circuit Court convictions for second-degree

murder, M.C.L. 750.317, assault with intent to commit murder, M.C.L. 750.83, and

possession of a firearm during the commission of a felony, M.C.L. 750.227b, respectively.

Petitioner has filed a *pro se* petition for writ of habeas corpus claiming that he is

---

[1]After Petitioner filed his petition for writ of habeas corpus, he was
transferred to the Chippewa Correctional Facility. The only proper respondent in a
habeas case is the habeas petitioner's custodian, which in the case of an
incarcerated habeas petitioner would be the warden of the facility where the
petitioner is incarcerated. *See Edwards v. Johns,* 450 F. Supp. 2d 755, 757 (E.D.
Mich. 2006); *See also* Rule 2(a), 28 U.S.C. § 2254. Therefore, the Court substitutes
Warden Greg McQuiggan in the caption.

incarcerated in violation of his constitutional rights. Respondent, through the Michigan Attorney General's Office, has filed a response, arguing that Petitioner's claims are procedurally barred. For the reasons which follow, the petition will be denied.

## II. Procedural History

Petitioner was found guilty after a jury trial of second-degree murder, assault with intent to commit murder, and felony-firearm related to the shooting death of Johnny Cannon and assault of Gary Newson. Following sentencing, Petitioner was appointed appellate counsel who filed an appeal by right. Petitioner's brief on appeal raised six claims:

I. Appellant is entitled to a new trial as the trial court committed a Graves error in denying his motion for directed verdict on the first-degree murder count, where there was no evidence of premeditation and deliberation.

II. Where the prosecutor failed to prove that Appellant did not act in self-defense, his second-degree murder and assault with intent to murder convictions violate his state and federal constitutional rights to be free from conviction in the absence of proof of guilt beyond a reasonable doubt.

III. The evidence produced at trial was insufficient to support a finding that the Defendant assaulted the complainant with intent to murder.

IV. Defense trial counsel was constitutionally ineffective in failing to move to suppress Appellant's unfairly prejudicial prior record of false statements which were made more than ten years earlier when he was a juvenile.

V. Trial court denied Appellant a fair trial by denying his request for instructions on reckless use of a firearm and injuring by discharge of a firearm intentionally pointed at another without malice, and Appellant was denied effective assistance of counsel by his attorney's failure to specifically request involuntary manslaughter.

VI. The trial court impermissibly invaded the jury's fact finding function by instructing the jury that Appellant's state of mind could be inferred from the use of a dangerous weapon.

Petitioner also filed a supplemental brief with the Court of Appeals asserting the following additional claim:

I. The COA should grant Appellant's argument for evidentiary hearing to place on the record the testimony of trial counsel.

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. *People v. Murray*, Mich. Ct. App. No. 239287 (September 30, 2003). Petitioner attempted to file an application for leave to appeal in the Michigan Supreme Court on January 7, 2004, but the state court rejected it because it was filed beyond the 56-day filing deadline. (See Affidavit of Michigan Supreme Court Clerk, Corbin R. Davis, regarding Michigan Court of Appeals No. 239287).

Petitioner returned to the trial court and filed a motion for relief from judgment. The motion asserted eight new claims and resubmitted the claims that were raised in Petitioner's appeal of right. On November 21, 2005, the state trial court issued an order denying Petitioner's motion for relief. The trial court found that the claims were barred from review:

> Upon review of the issues raised, this Court finds that the defendant has failed to establish that a retroactive change in the law has undermined the prior decision regarding the issues that were previously raised on appeal. Further, the defendant has failed to show good cause for failure to raise the new issues in a prior appeal, and actual prejudice for the alleged irregularities that support he claim for relief.

Opinion and Order dated November 21, 2005, at 3.

Petitioner filed a delayed application for leave to appeal the trial court's decision in the Michigan Court of Appeals and asserted nine claims:

> I. Appellant was denied his state and federal due process rights where his conviction was obtained on false and misleading sworn testimony and the prosecution did not affirmatively protect his right to a fair trial.

> II. Appellant was denied the effective assistance of counsel guaranteed him by the federal and state constitutions at trial and is entitled to a remand for an evidentiary hearing pursuant to *People v. Ginther*, 390 Mich 473 (1973),

3

or new trial.

III. Appellant's convictions for murder in the second degree and assault with intent to commit murder should be vacated since the guilty verdicts were against the great weight of the evidence and resulted in a miscarriage of justice.

IV. There was insufficient evidence as a matter of law to establish Appellant's conviction for murder in the second degree as required by the Due Process Clause.

V. The court denied Appellant of a fair and impartial jury where he denied an additional peremptory so the Defendant could excuse a biased juror.

VI. The prosecutor's misconduct violated Appellant's right to due process of law and a fair trial as guaranteed by both the Federal and State Constitutions.

VII. The cumulative effect of the foregoing errors denied Appellant of a fair trial in violation of due process of law and requires reversal.

VIII. Appellant is entitled to relief from judgment where he is actually innocent of the charged offenses and his appellate counsel denied him of his right to effective assistance of counsel under the Sixth and Fourteenth Amendments.

IX. Appellant resubmits the (6) arguments that were presented and decided in the Court of Appeals and due to external impairments were not reviewed by the Michigan Supreme Court.

The Michigan Court of Appeals denied Petitioner's delayed application "for failure to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." *People v. Murray*, Mich. Ct. App. No. 274506 (June 18, 2007). The Michigan Supreme Court then denied Petitioner's subsequent application for leave to appeal because he failed to "meet the burden of establishing entitlement to relief under MCR 6.508(D)." People v. Murray, Mich. Sup. Ct. No. 134599 (December 28, 2007).

Petitioner's amended petition for writ of habeas corpus raises the following claims:

I. Is Petitioner entitled to a new trial where the trial court denied his motion for directed verdict on the first-degree murder count before the jury, where

there was no evidence of premeditation and deliberation?

II. Is Petitioner entitled to a new trial where his second-degree murder and assault with intent to murder convictions violated his federal constitutional rights to be free from conviction absent proof of guilt beyond a reasonable doubt, where the prosecutor filed to prove that Petitioner did not act in self-defense?

III. Is Petitioner entitled to a new trial where the trial court denied him a fair and impartial trial denying his request for instructions on reckless use of a firearm and injuring by discharge of a firearm intentionally pointed at another without malice, and whether Petitioner was denied the effective assistance of counsel by his trial attorney's complete failure to specifically request involuntary manslaughter?

IV. Is Petitioner entitled to a new trial where the trial court impermissibly invaded the jury's fact finding function by instructing the jury that Petitioner Murray-Bey's state of mind could be inferred from the use of a dangerous weapon?

V. Is Petitioner entitled to a new trial where his convictions for second-degree murder and assault with intent to commit murder should be vacated since the verdicts were against the great weight of the evidence resulting in a miscarriage of justice?

VI. Is Petitioner entitled to a new trial where prosecutorial misconduct violated his vested right to a fair trial and due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution?

VII. Is Petitioner entitled to a new trial where he is actually innocent of the charged offense and but for the constitutionally deficient performance of appellate counsel, there is a reasonable possibility that the outcome of the appellate proceedings would have been different, violative of Petitioner's Sixth Amendment right to the effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution?

VIII. Is Petitioner entitled to a new trial where his conviction was obtained upon the known fabricated and misleading sworn testimony of the prosecution's key witness, and despite having complete knowledge of the falsity, the prosecutor failed to take affirmative steps to correct it, thereby violating Petitioner Murray-Bey's fundamental protected Sixth and Fourteenth Amendment rights to the due process of law and a fair trial?

IX. Is Petitioner entitled to a new trial where he was denied the effective assistance of trial counsel as guaranteed by the Sixth Amendment to the

United States Constitution, as such, since trial counsel's assignment of errors are not and cannot be deduced from the existing record, Petitioner is entitled to an evidentiary hearing in the U.S. District Court so that a complete testimonial record may be created to sufficiently permit this court to assess the merits of Mr. Murray-Bey's Sixth Amendment claims presented herein?

X. Is Petitioner entitled to a new trial where the cumulative effects of each of the foregoing assignments of constitutionally based errors resulted in the deprivation of Petitioner Murray-Bey's vested right to counsel?

XI. There was insufficient evidence as a matter of law to establish defendant Duguan Murray's conviction for murder in the second degree as required by the Due Process Clause.

### III. Facts[2]

Detroit Police Officer Frank Horan testified that he is an evidence technician. At 2:00 a.m., on December 25, 1998, he, along with Officers Niahros and Allen were called to 3040 Roosevelt in the City of Detroit. They arrived 25 minutes later. Photographs were taken of the interior of the home. A bullet was recovered from inside the front door. Another was recovered from the grass leading up to the front porch. Six .45 caliber automatic casings were recovered from the living room. His observations included bullet holes in the front door and screen door, blood on the screen door and a trail of blood leading down the steps and walk and continuing north along Roosevelt. Billie Long testified that he hosted a Christmas party, which included food and liquor for sale and gambling, at the residence.

---

[2]Respondent did not file the trial transcripts with the Rule 5 material. Nor did the State provide a statement of facts in its answer to the petition or in its briefs filed in the state court proceedings. The Court's recitation of the facts has therefore been drawn from the statement provided by Petitioner's appellate counsel during the appeal right, and from Petitioner's brief in support of his application for leave to appeal filed in the state courts during his collateral review proceedings. *See Burns v. Lafler*, 328 F. Supp. 2d 711, 714, n. 1 (E.D. Mich. 2004)*; Jamison v. Berbary*, 2002 WL 1000283, at *1 n.1 (S.D.N.Y. May 15, 2002); *Santana v. Kuhlmann*, 2001 WL 1143182, at *1 n.1 (S.D.N.Y. Sept. 26, 2001); *Lile v. McKune*, 45 F. Supp. 2d 1157, 1160 n.1 (D. Kan. 1999).

About ten person attended, including Petitioner and both complainants. Complainant Cannon arrived armed with a loaded semi-automatic handgun. Cannon gave it to Long to unload. Long was unable to remove the clip, and returned the weapon to Cannon. Cannon gave it to Newson, who did not unload it.

Long testified that an argument erupted between Petitioner and both complainants while Newson was throwing dice. Newson threatened to kill Petitioner and reached for his gun but did not pull it out. Cannon interceded to stop the fight. Long later heard a person named Mae-Mae shout that Newson was loading his gun. He stated that he then heard what sounded like two weapons being shot, but that he did not see any guns fired. Afterwards, he observed Petitioner holding what appeared to be a .38 caliber revolver.

Gary Newson testified that he was a longtime friend of Johnnie Cannon. On December 24, 1999, he and Cannon, along with James Darden, were celebrating Cannon's recent birthday at a bar. From there, they went to Cannon's aunt's bar. As they arrived, the bar was just closing for Christmas. Cannon's cousin Champagne invited them to a party. The three followed Champagne and her friend Nikki to the house, where Newson, Cannon, Darden and Petitioner played a dice game. When Cannon and Petitioner argued over a bet payoff, there was an argument and Petitioner left the room. When Petitioner returned, everybody shook hands and the game resumed.

After another argument, Newson and his friends decided to leave. Newson stated that as he was exiting, he was shot four times by Petitioner, receiving wounds to the right wrist, left thumb and twice in the stomach. He ran from the house, leaving Cannon behind. Outside, Newson sought a ride from Champagne, but she refused. He also could not open Cannon's car, which was locked. Petitioner exited the house and shot in his direction

7

before getting into a car and driving away. Newson returned to the house, finding Cannon injured. Newson took Cannon's car keys and drove to a gas station, where he passed out. He awoke at Grace Hospital.

Newson testified that Cannon had a black automatic handgun, and that he took possession of Cannon's gun from Long, leaving Cannon unarmed. Newson testified that he removed the clip from the gun and put the gun in his waistband where it remained during the ensuing events. He denied that he ever reloaded the gun or that he pointed the gun or threatened anyone with the gun, and he claimed that he disposed of the gun before going to the hospital. Newson also admitted that he lied at the preliminary examination when he testified that he was unarmed, that the dice game did not resume after the first argument, and that he was shot in the dining room.

Priscilla Nicole Mosley ("Nikki") had known Petitioner since 1993 and Cannon for about a year. She had just met Newson that evening. She worked at the Blackstone Bar and drove Petitioner to the party when it closed. At the party, she played the dice game with Petitioner, Cannon and Newson. Billie Long ran the game. According to Mosley, the first argument was between Newson and Petitioner and it was brief. When it ended, Petitioner left the house. He returned minutes later, stating that he did not care for Newson's gun play. They all shook hands and the game resumed.

Minutes later, after another argument, she, Cannon, Newson and Darden decided to leave. She and Cannon had to push Newson toward the door. She was concerned because she knew that he was armed and "because he was still hostile and arguing a little bit". As they were exiting, she heard a gunshot from behind. She ran to a nearby room and hid. She then heard five more shots. Mosley stated that she did not see who fired the

shots, but that Petitioner was behind her. She did observe Cannon in possession of a silver handgun, which he gave to Billie Long, who gave it to Newson. Newson removed the clip and placed it in his pocket. He placed the gun in his waistband. She did not observe Newson use the gun in a cavalier or threatening manner.

According to Mosley, Newson started the first argument, and Petitioner started the second one. When she left the house, she observed Newson returning to the house with a weapon in his hand. Although she was apparently seen by both defense counsel and the prosecution leaving an earlier court hearing hand-in-hand with Newson, Mosley denied the same repeatedly under oath.

Detroit Police Supervisor John Turney responded to the shooting to coordinate the efforts of the uniformed officers that arrived at the shooting scene. While there, he obtained a statement from Billie Long. Detroit Police officer William Davis arrested Petitioner.

Detroit Police Officer David Pauch testified that he is assigned to the Firearms Unit of the crime laboratory. He is assigned to identify firearms and to identify evidence caused by firearms. After being qualified as an expert in firearms identification, Pauch testified that he examined the bullets and .45 caliber cartridge casings found by Officer Horan, as well as the bullet recovered from the deceased. According to Panch, the six shell casings were fired by a single weapon and the spent bullets were fired through a single weapon. He could not determine whether the same weapon which fired the spent bullets also discharged the shell casings. Neither could he determine whether they were fired from a revolver or a semi- automatic.

Wayne County Chief Medical Examiner Sawait Kanluen was qualified as an expert in forensic pathology. He testified that in 1998 he performed an autopsy on Johnny

Cannon. According to Dr. Kanluen, death resulted from two gunshot wounds to the back. One passed through the mid-upper area of the chest and the heart. It was found in the chest. The other one went through the spleen and the left lung. It then exited the body. The two bullets caused injuries to the blood vessel of the heart, spleen and lung. Toxicology testing revealed a blood alcohol level of .24 and a urine alcohol level of .26.

Kelvin Johnson testified that he is the disc-jockey at the Blackstone Bar. Johnson testified that he saw Johnny Cannon at the Christmas Eve party on Roosevelt. Cannon was lying on the porch after he had been shot. Johnson also saw Petitioner at the party. He left the house before the dice game began. Sitting in his car, he heard gunfire and looked in the direction of the house. There he saw Gary Newson backing way from the door shooting a gun at the house six or seven times. Johnson observed that as Newson was shooting, Johnny Cannon - who was standing in the doorway - twisted, turned and fell to the ground.

Newson then ran up to Johnson's car holding a smoking gun. He pointed the gun at Johnson and asked for a ride to the hospital. When an older man told Newson to leave Johnson alone, Newson returned to the porch, took Cannon's keys and drove off. Johnson stated that he never saw Petitioner exit the house and he did not see Petitioner fire a weapon.

The prosecution then rested. Petitioner's motion for directed verdict was heard and denied.

The defense then called Detroit Police Officer Dario Muniz. Officer Muniz testified that based upon his investigation, there were two possible perpetrators.

Petitioner testified that on December 24, 1998, he was at the Blackstone Bar. When

the bar closed at about 9:00 p.m., he went to a party at 3040 Roosevelt, where he saw Johnnie Cannon and Gary Newson. After they became acquainted, Cannon suggested a dice game. Priscilla Mosley and Robert "Mae-Mae" Harvey also played. James Darden was present but did not play. During the game, it was discovered that Cannon was armed. Cannon turned his handgun over to Billie Long, who was unable to unload it. Long gave it to Newson who unloaded it, placing the clip in his pocket and the gun in his waistband. Petitioner was standing beside Newson.

When Petitioner won a bet and took the proceeds, Newson became angry, began to threaten Petitioner and reached for his gun. The others at the table calmed Newson. Petitioner left the room to call for a cab. When he returned, he took a position on the other side of the table. Asked by Cannon to continue gambling, Petitioner stated that he would only if there was no gunplay. Newson again became hostile and again threatened Petitioner. The others at the table again tried to calm Newson.

The game ended. Petitioner remained in the dining room as the others moved toward the front door. Petitioner then observed Priscilla say something to Newson, who then pulled out and racked his gun. Petitioner became scared and grabbed a .32 caliber revolver that was on the television. Newson raised his gun toward Petitioner and shot several times. Petitioner then shot back three times, exited through a small window off the kitchen and ran home.

On March 25, 1999, Petitioner was arrested and gave a statement to Sergeant Kinney. He was then released. In October or November, 2000, he received a call from Sergeant Kinney and turned himself in.

On cross examination, Petitioner was impeached by the prosecution for having

made false statements to the police more than ten years earlier, when he was a juvenile The impeachment was later used by the prosecution in its closing argument to suggest that Petitioner presented false testimony.

Detroit Police Homicide Sergeant Joanne Kinney testified that on March 25, 1999, Petitioner was taken into custody. He gave a statement to her and he was released. She later received a call from him inquiring about why he was featured on the Michigan's Most Wanted television program. She advised him to come in. He did so voluntarily. The defense then rested.

Defense counsel's requests for jury instructions on the lesser offenses of intentional discharge of a firearm causing injury and careless, reckless and negligent use of a firearm were denied. Following closing arguments, the state trial court instructed the jury that a gun is a dangerous weapon and that it may infer Petitioner intended to kill if he used a dangerous weapon.

Petitioner was found guilty of second degree murder, assault with intent to murder, and felony firearm.

## IV. <u>Analysis</u>

### A. <u>Standard of Review</u>

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Simply stated, under section 2254(d), Petitioner must show that the state court's decision "was either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established precedents, or was based upon an unreasonable determination of the facts." *Price v. Vincent*, 538 U.S. 634, 639 (2003).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## B. Procedural Default

Respondent asserts that review of Petitioner's claims is barred by his state court procedural default of failing to timely file an application for leave to appeal in the Michigan Supreme Court following the decision of the Michigan Court of Appeals during his direct appeal. Petitioner asserts that he did not timely appeal the Court of Appeals decision to the Michigan Supreme Court because he lost the use of a fellow prisoner for legal

assistance.

The Court must divide Petitioner's eleven claims into two groups for analytical purposes. Petitioner's first, second, third, and fourth claims were presented to the Michigan Court of Appeals during his appeal of right, and then they were reasserted in his motion for relief from judgment and subsequent appeal. Petitioner's fifth, sixth, seventh, eighth, ninth, tenth, and eleventh claims, however, were first presented to the state courts in his motion for relief from judgment and subsequent appeal. The Court finds that the two groups of claims are subject to the procedural default doctrine for separate reasons.

With respect to Petitioner's first four habeas claims, a habeas petitioner procedurally defaults a claim if he fails to raise it in an application for discretionary review with the state's highest court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). A claim raised in the Michigan Court of Appeals but not in the Michigan Supreme Court during a prisoner's appeal of right cannot be considered in federal habeas review. *See Harris v. Stegall,* 157 F. Supp. 2d 743, 750 (E.D. Mich. 2001).

Under M.C.R. 7.302(C)(3), Petitioner had fifty-six days to file a delayed application for leave to appeal with the Michigan Supreme Court. *Rice v. Trippett*, 63 F. Supp. 2d 784, 787 (E.D. Mich. 1999). Petitioner's conviction was affirmed by the Michigan Court of Appeals on September 30, 2003. Petitioner had fifty-six days from that date, or until November 25, 2003, to timely file an application for leave to appeal with the Michigan Supreme Court. Petitioner did not attempt to file an application for leave to appeal with the Michigan Supreme Court until January 7, 2004, over a month after the deadline had passed. Because Petitioner did not file a timely application for leave to appeal with the Michigan Supreme Court, his claims are procedurally defaulted. *Seeger v. Straub*, 29 F.

Supp. 2d 385, 391-92 (E.D. Mich. 1998).

Federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In *Murray v. Carrier*, 477 U.S. 478, 488 (1986), the Supreme Court defined cause sufficient to excuse procedural default as "some objective factor external to the defense," which precludes a habeas petitioner's ability to pursue his claim in state court.

Petitioner asserts that he failed to comply with the 56-day time limit for filing a delayed application for leave to appeal in the Michigan Supreme Court because "although MDOC officials provided him legal assistance by way of a prisoner, MDOC prison officials terminated the program." Petition, ¶ 11(d). A prisoner has no constitutional right to legal advice from another prisoner. *Shaw v. Murphy*, 532 U.S. 223, 230 (2001). Because Petitioner has no right to legal advice from another inmate, Petitioner cannot use this unenforceable right as an impediment to his litigation in the state courts. *See Reaster v. Konteh*, No. 2008 WL 3306726, * 11 (N.D. Ohio August 7, 2008). "Petitioner is responsible for pursuing his own claims. He cannot use his fellow inmate's absence and/or inability to provide legal advice as an excuse for his failure to comply with the rules." *Id.* Moreover, Petitioner's own ignorance of the law and the procedural requirements for timely filing a notice of appeal with the Michigan Supreme Court is an insufficient reason to establish cause to excuse his procedural default. *See Bonilla v. Hurley,* 370 F. 3d 494, 498 (6th Cir.

15

2004). Petitioner has offered no valid reason for the Court to excuse the default of his first four claims. Because Petitioner has not demonstrated cause for his procedural default, it is unnecessary for this Court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. at 533.

Additionally, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. Because petitioner has not presented any new reliable evidence that he is innocent of this crime, a miscarriage of justice will not occur if the Court declined to review his claims on the merits.

Finally, assuming that Petitioner had established cause for his default, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his claims would not entitle him to relief. The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *Terry v. Bock,* 208 F. Supp. 2d 780, 793 (E.D. Mich. 2002). For the reasons stated by the Michigan Court of Appeals in their decision affirming Petitioner's conviction, Petitioner has failed to show that his first four claims have merit. These claims are thus barred by procedural default and do not warrant relief.

Petitioner's fifth through eleventh claims are procedurally defaulted for a different reason. Petitioner first raised these claims in his motion for relief from judgment and the state courts denied relief pursuant to Michigan Court Rule 6.508(D).

The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); see also *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005). The last explained state court judgment should be used to make the determination whether the state court decision rests on a procedural rule. See *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Petitioner first properly presented his fifth through eleventh habeas claims to the state courts in his motion for relief from judgment. The state trial court specifically cited M.C.R. 6.508(D)(3) as the ground for denying Petitioner relief with respect to the claims that were not presented to the state courts in his appeal of right. The Michigan Court of Appeals and the Michigan Supreme Court denied relief pursuant to Michigan Court Rule 6.508(D). M.C.R. 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.

Assuming, at best for Petitioner, that the state appellate court decisions were unexplained, the Court must still look-through to the decision of the state trial court which explicitly relied on M.C.R. 6.508(D)(3). The case is therefore materially indistinguishable

17

from *Ivory v. Jackson*, 509 F.3d 284, 292-93 (6th Cir. 2007), in which the Sixth Circuit imposed a procedural bar in these same circumstances.

As stated above, a state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750-51.

Petitioner asserts in his seventh claim that his appellate counsel was ineffective as cause to excuse his failure to raise the other claims on direct appeal. Petitioner has not shown that appellate counsel was ineffective. In order to establish ineffective assistance of counsel, Petitioner must show "that counsel's performance was deficient . . . [and] that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). In determining whether counsel's performance was deficient,

> [t]he court must … determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance …. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland*, 466 U.S. at 690. Therefore, judicial scrutiny of counsel's performance must be "highly deferential." *Id.* at 689. The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. See *Jones v. Barnes*,

463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the … goal of vigorous and effective advocacy …. Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." See *Smith v. Murray*, 477 U.S. 527, 536 (1986) (*quoting Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that by omitting the claims contained in his motion for relief from judgment appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel presented viable issues on direct appeal. Indeed, Petitioner presents four of those same issues in the instant petition and still claims that they are meritorious. Petitioner has not shown that appellate counsel's strategy in presenting such claims and not raising the claims contained in the motion for relief from judgment was deficient or unreasonable.

19

Petitioner has thus failed to demonstrate that appellate counsel was ineffective so as to establish cause to excuse his procedural default. The Court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See Smith*, 477 U.S. at 533; *Long*, 722 F.2d at 289.

## IV. <u>Conclusion</u>

The Court will deny the Petition for Writ of Habeas Corpus. The Court will also deny Petitioner a Certificate of Appealability. Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack,* 529 U.S. at 484. When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.* "The district

court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny a Certificate of Appealability because it is not debatable whether the conclusion that Petitioner's claims are procedurally defaulted was correct. Petitioner acknowledges that his application for leave to appeal was untimely filed in the Michigan Supreme Court, and he has not stated a valid "cause" argument to excuse the default. Similarly, there is no question that the state trial court relied on a procedural ground to deny Petitioner's motion for relief from judgment, and Petitioner's ineffective assistance of appellate counsel argument must fail because appellate counsel raised substantial issues during Petitioner's appeal of right. Jurists of reason would not find this Court's resolution of Petitioner's claims to be debatable or that he should receive encouragement to proceed further. *Siebert v. Jackson,* 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002).

## V. Order

IT IS ORDERED that the Petition for Writ of Habeas Corpus is **DENIED.**   I T   I S FURTHER ORDERED that a Certificate of Appealability is **DENIED.**

**Dated:  October 12, 2010**

<u>**S/George Caram Steeh**</u>
**GEORGE CARAM STEEH**
**UNITED STATES DISTRICT JUDGE**

**CERTIFICATE OF SERVICE**

**Copies of this Order were served upon attorneys of record on
October 12, 2010, by electronic and/or ordinary mail and also to Dejuan Murray #199134 at Chippewa Correctional Facility, 4269 W. M-80, Kincheloe, MI 49784.**

**<u>S/Josephine Chaffee</u>**
**Deputy Clerk**